By the Court,
Bronson, J.
It is quite clear tnat the notary could not delegate his official authority to a clerk. ( Onondaga Co. Bank v. Bates, 3 Hill, 53.) But that is not the question. The plaintiff claims nothing on the ground of an official act of the notary. The question is upon demand and notice, and the plaintiff resorts to the memoranda of Hendy, who had died before the trial. He was a teller in the bank as well as clerk to the notary, and it matters not whether he attended to business of this kind on the retainer of the notary, or as a part of his duty to the bank. It is enough that he acted on this occasion in the usual course of his employment, and being dead, the entries which he made at the time were properly received in evidence. The rule for admitting them is not confined to entries made by public officers. (Nichols v. Goldsmith, 7 Wend. 160 ; Welsh v. Barrett, 15 Mass. R. 380.)(a) Where there is any room for doubt, it is for the jury to say how much the entries prove.
I see no objection to the testimony of the book keeper in relation to these memoranda. He was not called to give a construction, or to declare the legal effect of a written instrument ; but, as a person skilled in such matters, to tell the jury what words these short entries stood for. It is not unlike the case of an instrument written in a foreign tongue, where a translator may be called in to tell the jury how the instrument reads. (b) I think the evidence was properly received.
*132 As the fourth of July is a public holiday, the demand should have been made on the third. (Ransom v. Mack, 2 Hill, 587.) But the objection taken at the trial did not go to the day on which the demand was made, but to the manner in which the business was done. If objection had been taken to the day, it may be that the plaintiff would have avoided the difficulty by giving further evidence.
It seems to have been assumed on the trial that Babcock ■ owned the note, and sent it to the bank, where it was made payable, for collection. Notice was sent to Babcock, the last endorser, with notices for the other endorsers ; and if he was not mistaken as to the proper mode of service, he gave notice *133 to the defendant Benham on the same day or the day after he received advices from the bank. Either day was sufficient. (Howard v. Ives, 1 Hill, 263 ; Bank of the United States v. Davis, 2 id. 451.) But as Babcock and the defendant Benham both lived in the same village, I think the service should have been personal, or by leaving the notice at the dwelling house or place of business of the endorser, and that service through the post office was not sufficient. The post office is not a place of deposit for notices to endorsers, except where the notice is to be transmitted by mail to another office. (Ransom, v. Mack, 2 Hill, 587.) None of our cases have gone further than that.
New trial granted.

а) See Brewster v. Eoane, (2 Hill, 537.)

 As to the general doctrine on this subject, see Cowen & Hill’s Notes to Phil. Ev. 1418, 1419, and the cases there cited; also Wigram on Extr. Ev. 48, 9, 3d cd.; Gresl. Eq. Ev. 198, 9.
Where the difficulty arises from the obscurity of the writing itself—e. g. if it be *132 illegible from lapse of time, accident &c.—one skilled in deciphering may be called; as, for instance, a clerk from the post office. (Gresl. Eq. Ev. 198,9; Cow-en & Hill’s Notes to Phil. Ev. 1419.) Mr. Greenleaf remarks that, in such cases, the question “ is to be determined by the court alone,” (Greenl. Ev. 319,) and for this he cites a nisi prius decision said to have been made by Lord Denman. (Reman v. Haywood, 2 Adol. Ellis, 666, note.) The very point arose in Armstrong v. Burrows, (6 Watts’ Rep. 266.) There the parties, on a trial in the common pleas, differed about the date of a receipt which had been rendered illegible; the one contending that it was dated in 1823, and the other that the date was 1824. The court assumed the exclusive right of determining what the figures were, and refused to put the case to the jury. On this ground error was brought to the supreme court, where the judgment of the common pleas was reversed. Gibson, Ch. J., who delivered the opinion of the supreme court, observed: “ A writing is read before it is expounded, and the ascertainment of the words is finished before the business of exposition begins. If the reading of a judge were not matter of fact, witnesses would not be heard in contradiction of it; and though he is supposed to have peculiar skill in the meaning and construction of language, neither his business nor learning is supposed to give him a superior knowledge of figures or letters. His right to interpret a paper written in Coptic characters, would be the same that it is to interpret an English writing; yet the words would be approached only through a translation. The jury were, therefore, not only legally competent to read the disputed word, but bound to ascertain what it was meant to represent.” (Id. 268.) In Jackson ex dem. Swain and others v. Ransom, (18 John. Rep. 107,) a similar question was submitted to the jury; and this course accords in principle with several cases decided in the English court of chancery. (Masters v. Masters, 1 P. Williams, 421, 425 ; Norman v. Morrell, 4 Ves. 769, 770; Goblet v. Beechey, 3 Sim. 24, more fully stated in Wigram on Extr. Ev. 185, 3d ed.)